IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT PARKERSBURG

UNITED STATES OF AMERICA,

    Respondent,

v.                                           CRIMINAL NO. 6:00-00262
                                                 (CIVIL ACTION NO. 6:03-2375)

FRANCISCO ALBERTO LOZANO-TORRES,

    Movant.

## **FINDINGS AND RECOMMENDATION**

In February of 2001, following consummation of a plea agreement, Francisco Alberto Lozano-Torres entered a plea of guilty to one of two counts of an indictment in which he was charged with conspiring to commit money laundering,[1] and in May of 2001 he was sentenced to a term of imprisonment of 109 months to be followed by three years supervised release. In January of 2003, the court vacated and then reinstated judgment, restoring Lozano-Torres' appeal rights.[2] Thereafter, his sentence was affirmed on appeal. United States v. Lozano-Torres, No. 03-4092, 68 Fed. Appx. 443 (4th Cir. June 24, 2003). Lozano-Torres has now filed a motion under the provisions of 28 U.S.C. § 2255 in which he asserts that counsel representing him was ineffective at sentencing. The United States has filed a response, movant has filed a reply and the matter is ready for decision.

---

[1] In count one of the indictment, Lozano-Torres was charged with conspiring to distribute more than fifty (50) grams of methamphetamine.

[2] Following the filing of a § 2255 motion in which Lozano-Torres asserted he had been denied his right to appeal, the court, granting relief, vacated judgment and entered a new judgment on January 13, 2003.

In ruling on movant's claim of ineffective assistance, the court evaluates counsel's performance under standards established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), recognizing that the proper standard for attorney performance is that of "reasonably effective assistance" and that movant must establish not only "that counsel's representation fell below an objective standard of reasonableness." id. at 687-88, but also that counsel's deficient performance prejudiced the defense, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," "reasonable probability" being a probability "sufficient to undermine confidence in the outcome." Id. at 694. The "performance inquiry" requires the court to consider "whether counsel's assistance was reasonable considering all the circumstances," id. at 688, and scrutiny of counsel's performance under the prescribed constitutional standard does not contemplate application of a "set of detailed rules for counsel's conduct," id. the Supreme Court having "declined to articulate specific guidelines for appropriate attorney conduct ... ." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Recognizing the "constitutionally protected independence of counsel" and "the wide latitude counsel must have in making tactical decisions," the Supreme Court has admonished reviewing courts that, in resolving ineffectiveness claims, "scrutiny of counsel's performance must be highly deferential," that every effort must be made "to eliminate the distorting effects of hindsight" and that the challenged conduct must be evaluated "from counsel's perspective at the time." Strickland v. Washington, supra at 689. Moreover, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.

(citation omitted). Utilizing these standards, the court does not find in the motion or in the record of this case any basis for concluding that counsel's performance was deficient.

Asserting that "[t]he Government's case against petitioner, as it appears on the record, is without substance prior to June 1, 2000," and that "[n]o evidence of actual contact between Petitioner and the other members of the conspiracy prior to Nov. 2000 appears in the record," movant faults his attorney for failing to object to adjustments to his offense level based on the amount of drugs and value of funds involved in the money laundering and on his role in the offense. In the presentence report, which was not objected to either by the United States or the defendant, movant's offense level was increased one level based on the government's estimate that movant was involved in "approximately 20 pounds of methamphetamine at $6,500 per pound yielding $130,000 in laundered funds." His offense level was also increased four levels based on his leadership role in the offense.

Were the court to rely principally on information gleaned from grand jury testimony,[3] as movant has in his memorandum, an argument of ineffective assistance might conceivably be supportable. The court, however, must evaluate counsel's performance from his "perspective at the time," Strickland v. Washington, supra at 689, and much had occurred since the grand jury heard testimony from some of movant's co-conspirators. Thus, at the time movant entered his plea four of his co-defendants and a defendant in a related case had entered into plea agreements with the United States and three of his co-defendants and the defendant in the related case had entered guilty pleas. The fourth co-defendant entered a guilty plea on the same day as movant. Significantly, by

---

[3]The grand jury testimony cited by movant was provided prior to the return of the indictment in which movant and six others were charged with conspiring to distribute methamphetamine and to commit money laundering.

3

the time he was sentenced presentence investigation reports had been prepared for the four co-defendants and the defendant in the related case. Carole L. Cooper, a co-defendant, had "advised" that the methamphetamine she distributed since early 1999 had been obtained from movant, providing details concerning the manner in which she distributed the drug. The government estimated that Cooper had been involved in distributing 20 pounds of methamphetamine at $6,500 per pound, an estimate to which she made no objection.[4] Others confirmed Cooper's information, including Willis Secoy, a co-defendant residing in Parkersburg who pled guilty to money laundering after movant had entered his plea but prior to movant's sentencing. Mr. Secoy confirmed that movant was the source for the methamphetamine distributed by Cooper and, as had Cooper, did not object to the government's estimate of 20 pounds of methamphetamine at $6,500 a pound.[5] Taking into account these facts, which were confirmed by others providing information with respect to the distribution of methamphetamine by movant, his co-defendants and others, and regardless of whether evidence reached back to the initiation of the conspiracy as set forth in the indictment, it is apparent that the United States had overwhelming evidence of movant's involvement in quantities of methamphetamine and its monetary value sufficient to support an increase in the offense level

---

[4]Movant has asserted that counsel should have called Cooper to testify at sentencing concerning his role in the offense. However, in an affidavit filed in Civil Action No. 6:01-0927, his initial § 2255 motion, he states that, following sentencing when he was discussing ways of attacking the four level enhancement for his role in the offense, he had advised counsel that "she probably would not provide me with a declaration that would contradict her testimony at trial." Nothing helpful, and much which was unhelpful to movant, is contained in the information provided in Cooper's presentence report.

[5]While the court is unable to point to specific evidence in the record, and does not find it as a fact, it appears that 20 pounds of methamphetamine was a very conservative figure.

4

based on the value of the funds involved in the money laundering count,[6] and counsel's decision not to contest this adjustment was clearly reasonable.[7]

Movant also asserts that counsel should have objected to the four level increase he received for his role in the offense. Initially, the court notes that on his appeal the Court of Appeals for the Fourth Circuit found the evidence sufficient to support the adjustment for movant's role in the offense, and that issue is resolved for purposes of this motion.[8] Beyond the issue of sufficient evidence, however, is the fact that evidence established that movant was involved in an extensive methamphetamine distribution ring, that he secured the methamphetamine from a contact in Mexico, and that he distributed the methamphetamine through a number of individuals, including several of his co-defendants, with the assistance of other co-defendants. Patently, movant exercised a leadership role in a criminal activity involving more than five participants, and counsel's decision not to object to the adjustment for his role in the offense was, under the circumstances, wholly reasonable.

Finally, to the extent that movant relies upon the decisions of the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), it need only be noted that the Court of Appeals for the Fourth Circuit held, in conformity with all other circuit courts of appeals addressing the question, that

---

[6]The Court of Appeals, of course, determined that the evidence supported the government's estimate of quantity and value.

[7]To the extent that movant complains of counsel's failure to object to his base offense level of 23, it need only be noted, as the Court of Appeals held, that a base offense level of 23 applies when a conviction, such as movant's conviction, is based on 18 U.S.C. § 1956(a)(1)(A).

[8]See, Boeckenhaupt v. United States, 537 F.2d 1182, 1883 (4th Cir. 1976).

"Booker does not apply retroactively to cases on collateral review." United States v. Morris, 429 F.3d 65, 66 (4th Cir. 2005).

## RECOMMENDATION

On the basis of the foregoing findings of fact and conclusions of law, it is **RESPECTFULLY RECOMMENDED** that the relief sought in this § 2255 proceeding be denied.

Movant and respondent are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Joseph R. Goodwin, United States District Judge, and that, in accordance with the provisions of Rule 8(b), Rules Governing, § 2255 Cases, the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the specific portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to movant and all counsel of record.

DATED:    September 14, 2006

*[signature]*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

6